## EMISSION OF OFFENSIVE ODORS BY A REDUCTION PLANT.

Court of Appeals for Hamilton County.

THE UNION REDUCTION COMPANY v. JOHN STORY.*

Decided, April 14, 1916.

*Injunction—Lies Against Operation of a Plant Throwing off Noisome Odors, When.*

A reviewing court will not disturb an order enjoining a reduction plant from casting off noisome or offensive odors, where it is in evidence that such odors have been emitted to the annoyance of persons living nearly half a mile distant, and experts have testified without contradiction that with a plant properly equipped the emission of such odors could only be due to carelessness or accident.

*Peck, Shaffer & Peck* and *Healy, Ferris & McAvoy,* for plaintiff in error.

*Kelley & Remke,* contra.

JONES (E. H.), P. J.

In the court below John Story asked for an injunction against the Union Reduction Company restraining it from casting upon his premises and into his dwelling-house noisome smells, gases, odors, etc., arising from its garbage and dead animal crematory or reduction plant.

---

*Affirming *Story* v. *Union Reduction Co.,* 19 N.P.(N.S.),—.

Motion to require the Court of Appeals to certify its record in this case overruled by the Supreme Court May 29, 1916.

A permanent injunction was granted in this language:

"It is therefore ordered, adjudged and decreed by the court that an injunction be, and the same hereby is granted, restraining the defendant from operating its reduction plant so as to continuously create or cause to be cast upon the land of the plaintiff described in the petition any noisome or offensive odors, vapors or gases, or into or about the dwelling of plaintiff to the serious injury of plaintiff in health, comfort or property from and after the date of the entry of this decree."

The company seeks here a reversal of this judgment.

There was a large number of witnesses called upon either side and, needless to say, the testimony is conflicting. There is a preponderance, however, in support of the finding of the court that "at certain times a nuisance is created by the way in which the defendant's reduction plant is operated."

The reduction company has a contract with the city of Cincinnati requiring it to gather and dispose of by cremation and reduction process the garbage, dead animals and animal offal of the city. This work by law devolves upon the city, but there is statutory authority for the contract made with the plaintiff in error by the city, Section 3809, G. C.

It is claimed that the plant has the sanction of the Legislature and city council, that it is performing a public function that has to do with and is closely related to the health and general welfare of the people of Cincinnati and that for these reasons an injunction will not lie. The authorities to which we are cited support this claim but provide that the work must be done with a high degree of care and with constant viligance by those in charge to see to it that only the latest and most improved machinery and appliances are employed.

The evidence shows without contradiction that this plant at the time of the final hearing, in its plan and equipment, was fully up to date. Mr. Jesse Moorman, president of the company, and Mr. Charles E. Woodworth, a man of many years' experience and an expert upon the subject, were called by defendant below and testified as to the character of the plant.

Mr. Moorman testified that:

"The plant at our last trial was in an uncompleted condition. Since then we have completed all the buildings, we have put new conveyors in the entire plant, we have added four more units to the digestors, we have completed the decreasing plant, and installed one new drier and a scrubber." (Record, p. 697.)

"Since the last trial we have rebuilt this plant. In that time we have added—well, we have put in a complete new conveyor system from start to finish. A portion of this decreasing plant was installed at that time, and one boiler, and one drier, and four units of digestors, and the scrubber we have put in since that time." (Record, p. 705.)

He also testified that he was in the garbage and reduction business at the same time in Indianapolis and St. Louis, and was familiar with other plants in the United States.

"Q. Do you know of any mechanism for the distribution of gases, or elimination of odors, not in operation in this plant by yourself? A. I do not." (Record, p. 702.).

"Q. What are the odors coming from the plant now, Mr. Moorman, what causes them? A. What odors do you mean?

"Q. I mean the odors that emanate from that plant; you get odors from the plant, do you not? A. You don't get odors from the plant unless you go on our premises and get close to the plant.

"Q. You say there are no odors that carry away from the plant? A. No, not to amount to anything, no, sir." (Record, p. 710.)

"Q. You think, so far as you know, there are no carrying odors from that plant today? A. I think not." (Record, p. 711.)

Mr. Woodworth testified as follows:

"Q. I will ask you to state whether there is any device or mechanism in use anywhere for the elimination of odors and the destruction of the two smelling gases that has not been introduced at this plant, any successful device? A. I know of none.

"Q. I wish you would state to the court whether there is anything in the plan of operations, or in the mechanism to be used which can be added to this plant to further eliminate the

odors. A. I know of nothing, comparing them with other plants of similar character in the country."

"Q. What difference is there in the carrying of the odors now and a year ago? A. Well, with the device they have introduced they have mitigated the carrying of the noxious and offensive gases and odors to the extent of introducing an appliance that is accepted by all the garbage concerns in this country as being the most practical for this purpose." (Record, pp. 661-662.)

"Q. Do you know of any plant that is superior to this equipment, to this plant, for the handling of the same tankage tonnage? A. know of no plant, to my knowledge, sir." (Record, p. 663.)

"Q. With the introduction of the new apparatus, you say it will eliminate all the far carrying odors? A. Yes, sir, except under extraordinary conditions.

"Q. Except when there would be carelessness of the employes, valves getting out of order or the pipes bursting? A. Yes."

"Q. About how far away from that plant would you say the local odors that are peculiar to the plant, would be discerned? A. Well, according to the direction of the wind, sir. If you were in the teeth of the wind, that might carry two or three blocks, and if you were against the wind you wouldn't know the plant was there.

"Q. Well, now, if you were to be told that during the past five or six months, as often as once or twice a week, the people experienced the most disagreeable odors and that of burning flesh and garbage, at a distance from half a mile to a mile and a quarter, to what would you attribute that? A. Two or three times a week? If such were an established fact, I would think there was carelessness that often." (Record, pp. 675-676.)

"Q. If you were to be told people in their homes a distance of from half a mile to a mile and a half were frequently unable during the past five or six months to eat their meals in comfort because of this sickening odor, what would you say that odor came from? A. I couldn't tell of any other source, of an odor of that type, so far carrying, that would come from any other part of that process except what I told you, from gas that came

from the digestor that was allowed to escape through some cause, either negligence or an accident.'' (Record, p. 678.)

We thus have proof from the company's witnesses that, except through carelessness or accident, there could be no appreciable annoyance to Mr. Story who lives nearly half a mile from the plant.

We can not see, therefore, how the plaintiff in error can justly complain of the restraining order granted by the court below. If its own expert witnesses are correct (and their evidence is not denied or controverted), there is no excuse in law or morals for offensive odors reaching Mr. Story's home twenty-three hundred feet away. It seems to us that the order granted below restraining the defendant company from operating its reduction plant so as to continuously annoy Story in his said home with noisome or offensive odors, vapors or gases is reasonable and proper, and one from which there can be no relief in a reviewing court.

Judgment affirmed.

JONES (Oliver B.), J., and GORMAN, J., concur.

---

## JUDGMENT ATTACKED ON WEIGHT OF EVIDENCE GIVEN BY RELATIVES.